HODGART & CO. *v.* UNITED STATES (No. 661).[1]

PLANIT PACKING FOR ENGINE PACKING AND CALKING PURPOSES.

Tin parings and lead shavings obtained by the use of a lathe in the ordinary methods of turning bars of metal to shape and form might, it is true, be deemed waste, but there is no evidence here to negative the idea that these parings and shavings may have been produced for use in the manufacture of a packing. The appearance of the sample is suggestive of an article specially prepared for calking purposes. The importation was properly assessed under paragraph 199, tariff act of 1909, as articles or wares not specially provided for composed wholly or in part of lead or other metal.

## United States Court of Customs Appeals, November 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 25107 (T. D. 31429).

[Affirmed.]

*Comstock & Washburn (Albert H. Washburn* and *J. Stuart Tompkins* of counsel) for appellants.

*Wm. K. Payne,* Deputy Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise involved here is known as "planit" packing and is used for engine packing and calking purposes. It is not designed to be melted, but to be put in place by pounding. It was entered at the port of Chicago in October, 1909; was assessed for duty as a manufactured article wholly or in chief value of metal under the provisions of paragraph 199 of the tariff act of 1909, which reads as follows:

199. Articles or wares not specially provided for in this section, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem.

The importers claimed the merchandise to be dutiable as waste under paragraph 479 of the same act, which is as follows:

479. Waste, not specially provided for in this section, ten per centum ad valorem.

The Board of General Appraisers overruled the protests.

The only evidence is a sample of the importation and the testimony of one witness on behalf of the importers. From the latter it appears that the importation is composed of tin parings and lead shavings, and that these shavings are obtained by the use of a lathe in the ordinary methods of turning bars of metal to shape and form. In what proprotion these tin parings and lead shavings are combined to constitute the merchandise before us the record does not show, nor does it appear therefrom how the same are united to form the "Planit" packing.

We are unable to discover in the record evidence sufficient to justify the conclusion that the importation is waste.

---

[1] Reported in T. D. 32048 (21 Treas. Dec., 600).

While it is argued for the importers that the packing is composed of shavings of tin and·lead gathered up after they have been cut off by a sharp-edged instrument in the process of manufacturing other articles, which shavings, it is claimed, before being gathered up are waste, yet the record does not disclose clearly that such is the fact. The importers did not show how this "Planit" packing is made.

As a result of their combination, whatever it may be or however accomplished, these parings and shavings after being united have received a new commercial designation, namely, "Planit packing."

So far as the evidence discloses it is just as reasonable to infer that these shavings were produced for the express purpose of manufacturing this engine packing as it is to infer that they are the waste products of some other manufacture, as claimed by the importers. The appearance of the sample of the importation before us is suggestive of the fact that it has been specially prepared and fitted for calking purposes and tends to negative the claim that it is waste.

We think, as did the board, that the evidence is insufficient to overcome the presumption of the correctness of the collector's classification.

The judgment of the Board of General Appraisers is *affirmed*